UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROCHELLE CARSON-CLARK,

                           Plaintiff,

                v.

ANDREW M. SAUL,[1] Commissioner of
  Social Security,

                           Defendant.
_____

**DECISION
and
ORDER

18-CV-1121F
(consent)**

APPEARANCES:          LAW OFFICES OF KENNETH HILLER, PLLC
                              Attorneys for Plaintiff
                              KENNETH R. HILLER, and
                              ELIZABETH ANN HAUNGS, of Counsel
                              6000 North Bailey Avenue
                              Suite 1A
                              Amherst, New York 14226

                              JAMES P. KENNEDY, JR.
                              UNITED STATES ATTORNEY
                              Attorney for Defendant
                              Federal Centre
                              138 Delaware Avenue
                              Buffalo, New York 14202
                                      and
                              AVNI DINESH GANDHI,
                              Special Assistant United States Attorney, of Counsel
                              Social Security Administration
                              Office of General Counsel
                              61 Forsyth Street, S.W.
                              Suite 20T45
                              Atlanta, Georgia 30303

## **JURISDICTION**

On October 7, 2019, the parties to this action, consented pursuant to 28 U.S.C.

---

[1] Andrew M. Saul became Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

§ 636(c) to proceed before the undersigned. (Dkt. 11). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on June 4, 2019, (Dkt. 8), and by Defendant on July 23, 2019 (Dkt. 9).

**BACKGROUND**

Plaintiff Rochelle Carson-Clark ("Plaintiff"), brings this action under the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications filed with the Social Security Administration ("SSA"), on February 11, 2015, for Social Security Disability Insurance benefits under Title II of the Act ("SSDI"), and for Supplemental Security Income under Title XVI of the Act ("SSI") (together, "disability benefits"). AR[2] at 190-95, 205-13. Plaintiff alleges she became disabled on November 22, 2013, AR at 190, 205, 222, based on high blood pressure, high cholesterol, carpal tunnel syndrome, migraines, neuropathy, and bulging disc. AR at 226. Plaintiff's applications initially were denied on April 13, 2015, AR at 103-15, 175-82, and, at Plaintiff's timely request, on March 16, 2017, an administrative hearing was held by in Buffalo, New York, by video conference before administrative law judge Roxanne Fuller ("the ALJ"), in Alexandria, Virginia. AR at 28-71, Appearing and testifying at the hearing were Plaintiff, then represented by Michelle Mansmann, Esq., as well as vocational expert Suman Srinivasan ("the V.E."). On July 19, 2017, the ALJ issued a decision unfavorable to Plaintiff ("ALJ's decision"). AR at 11-27. Plaintiff timely appealed the ALJ's decision to the Appeals Council which, on August 15, 2018, issued a decision

---

[2] References to "AR" are to pages of the Administrative Record electronically filed by Defendant on April 5, 2019 (Dkt. 7).

2

denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision. AR at 1-9. Plaintiff then commenced this action on October 12, 2018, seeking judicial review of the ALJ's decision.

On June 4, 2019, Plaintiff filed a motion for judgment on the pleadings (Dkt. 8) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 8-1) ("Plaintiff's Memorandum"). On July 23, 2019, Defendant filed a motion for judgment on the pleadings (Dkt. 9) ("Defendant's Motion"), attaching Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Rule 5.5 (Dkt. 9-1) ("Defendant's Memorandum"). On August 13, 2019, Plaintiff filed Plaintiff's Response to the Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 10) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is GRANTED; Defendant's Motion is DENIED; the matter is REMANDED for further proceedings consistent with this Decision and Order.

## **FACTS**[3]

Plaintiff Rochelle Carson-Clark ("Plaintiff" or "Carson-Clark"), born April 25, 1961, was 52 years old as of November 22, 2013, her alleged disability onset date ("DOD"), and 56 as of July 19, 2017, the date of the ALJ's decision. AR at 23, 190, 205, 222. Plaintiff graduated high school where she attended regular classes, attended college for

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary for determining the pending motions for judgment on the pleadings.

two years, and completed a clerical program in business school.  AR at 227.  As of the March 16, 2017 administrative hearing, Plaintiff lived with her 75-year old mother, who cooks and cleans and helps Plaintiff tend to her grooming.  AR at 63. Plaintiff's adult son stops by and helps with meal preparation.  AR at 63.  Plaintiff described a typical day as waking up, washing up, checking on her mother, watching television, and talking with her mother.  AR at 63-64.  Plaintiff's mother pays the bills, and Plaintiff has a driver's license, but drives less than she used to because pain in her hands makes it hard to hold onto the steering wheel.  AR at 64-65.

    Plaintiff's work history includes work as a bus driver and as a treatment facilitator at an alcohol and drug treatment program, AR at 228, but has not worked since November 22, 2013, when Plaintiff was involved in an automobile accident ("the accident"), sustaining injuries to her cervical and lumbar spines for which Plaintiff was initially treated at the emergency department at Erie County Medical Center ("ECMC"), in Buffalo, New York, where X-rays of Plaintiff's lumbar and cervical spines indicated some mild, degenerative changes, and examination was otherwise unremarkable except for Plaintiff's blood pressure which was elevated initially at 250/150, and later at 193/99, and Plaintiff was discharged with a prescription for blood pressure medication. AR at 260-71.  In connection with a no-fault insurance claim pertaining to the accident, on December 4, 2013, Plaintiff commenced treatment with Winston G. Douglas, M.D. ("Dr. Douglas"), for pain in her neck and shoulders and high blood pressure.  AR at 346-400, 497-528.  From January 1, 2014, through February 14, 2015, Plaintiff received chiropractic care from Joshua Ball, D.C. ("Dr. Ball"), AR at 430-44, and Lawrence

4

Adymy, D.C. ("Dr. Adymy"). AR at 279-345. Plaintiff also was followed for her hypertension by Kenneth L. Gayles, M.D. ("Dr. Gayles"). AR at 401-16.

On October 31, 2014, needle EMG (electromyography) of Plaintiff's left wrist was positive for mild carpal tunnel syndrome. AR at 324. Prior to the accident, Plaintiff underwent carpal tunnel release on her right wrist. AR at 42-44, 58-59 (Plaintiff testifying she had right wrist carpal tunnel release surgery on her right wrist, but she experienced no relief of her symptoms from the surgery); *see* AR at 404 (noting Plaintiff with bilateral carpal tunnel syndrome). Since the accident, Plaintiff has pain in both hands and difficulty holding items in her hands, and with dressing and grooming. AR at 45-49.

On June 19, 2014, Plaintiff stated to Dr. Douglas she returned to work the previous week. AR 376. At the administrative hearing, Plaintiff testified she briefly returned to work as a certified nurse aid ("CNA"), but fell together with a patient Plaintiff was assisting and had not since worked. AR at 32, 65. Plaintiff also testified at the administrative hearing that while she was out of work on a disability leave following the accident, her employer went into bankruptcy and was taken over by a new owner which advised if Plaintiff wanted to return to her job, she would have to apply and be hired as a new worker. AR at 66.

## DISCUSSION

**1.     Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

**2.     Disability Determination**

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. The first step is to determine whether the applicant is engaged in substantial gainful activity ("SGA") during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement,[5] there is a presumption of inability to perform SGA and the claimant is deemed disabled regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and

---

[5] The duration requirement mandates the impairment must last or be expected to last for at least a continuous twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

7

416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff meets the disability insured status requirements through December 31, 2013, AR at 16, has not engaged in SGA since November 22, 2013, her alleged disability onset date, *id.*, suffers from the severe impairments of cervical stenosis, lumbar spondylitic changes with disc bulge, carpal tunnel syndrome, and hypertension, *id.*, but that Plaintiff's reported right shoulder pain and left shoulder and arm pain, as well as anxiety, were not medically determinable impairments, *id.* at 17, and that Plaintiff did not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpt. P, App. 1. *Id.* The ALJ determined Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except Plaintiff can never climb ladders, ropes, and scaffolds, frequently handle objects which is gross manipulation with both hands, frequently finger which is fine manipulation with both hands, and can occasionally be exposed to moving, mechanical parts and unprotected

heights, and occasionally operate a motor vehicle.  AR at 17-22.  The ALJ further found

Plaintiff capable of performing her PRW as a treatment facilitator, which the ALJ

considered consistent with an admissions coordinator,[6] AR at 22, and, thus, was not

disabled as defined under the Act from November 22, 2013 through the date of the

ALJ's decision.  AR at 23.

In support of judgment on the pleadings, Plaintiff argues the ALJ erred at step

two of the five step analysis in failing to consider as medically determinable impairments

other medical conditions appearing in Plaintiff's medical records, including obesity,

cardiomegaly (enlarged heart), left ventricular hypertrophy (thickening of the wall of the

heart's main pumping chamber, often attributed to high blood pressure, causing the

heart to work harder), atherosclerosis with claudication (thickening and stiffening

arteries caused by plaque buildup with pain resulting from too little blood flow to

muscles), asthma, and anxiety.  Plaintiff's Memorandum at 8-11.  Plaintiff also maintains

the ALJ erred in rejecting the opinion of Dr. Douglas, which is the only medical opinion

of record, such that the ALJ crafted an RFC without any medical expert guidance, *id.* at

11-14, and further erred insofar as Plaintiff's PRW as a treatment facilitator, as

described by Plaintiff, was not sufficiently similar to that of an admissions coordinator as

the ALJ found.  *Id.* at 15-18.  In opposition, Defendant argues the ALJ did not err at step

two by failing to specifically discuss the impairments identified by Plaintiff because

Plaintiff did not list such conditions among her alleged impairments and the record is

devoid of any evidence indicating such impairments had any impact on Plaintiff's ability

to perform any basic work activities, Defendant's Memorandum at 13-16, the ALJ did

---

[6] The ALJ incorrectly refers to this position as an "administrator coordinator."  AR at 22.

9

not err in discounting medical opinion evidence of record because other evidence in the record was sufficient to permit the ALJ to make an RFC assessment, *id.* at 17-20, and the ALJ properly relied on the V.E.'s determination that Plaintiff's treatment facilitator position, as performed by Plaintiff, was consistent with the requirements of the admissions coordinator job identified by the V.E. *Id.* at 21-23. In reply, Plaintiff reiterates her arguments that the ALJ's step two error warrants remand, Plaintiff's Reply at 1-2, the ALJ erred in crafting an RFC without benefit of a medical opinion of record, *id.* at 2-5, and the ALJ's finding that Plaintiff's PRW as a treatment facilitator was the equivalent of an admissions coordinator is not supported by the record. *Id.* at 5-6. There is no merit to Plaintiff's first argument, but the second and third arguments require remand for further proceedings including a new hearing and decision consistent with the following discussion.

With regard to Plaintiff's argument the ALJ erred by failing to consider certain conditions, including obesity, cardiomegaly, left ventricular hypertrophy, atherosclerosis with claudication, asthma, and anxiety as medically determinable despite repeated references in the record to such condition, as Defendant argues, AR at 13-14 (referencing AR at 20-21), not only did the ALJ specifically consider Plaintiff's left ventricle hypertrophy, asthma, and atherosclerosis with claudication, rendering Plaintiff's argument moot as to these conditions, *see Pfleuger v. Comm'r of Soc. Sec.*, 2020 WL 1061490, at * 4 (W.D.N.Y. March 5, 2020) (citing cases finding no step two error where the ALJ, although failing to consider an impairment as severe, nevertheless included such impairment in considering the remaining steps of the sequential evaluation), but Plaintiff did not assert disability based on these conditions. *See*

*Stanton v. Astrue*, 370 Fed.Appx. 231, 233 (2d Cir. 2010) (finding no step two error where the claimant did not assert disability based on conditions not addressed by the ALJ). Nor is the ALJ required to consider conditions for which the record is devoid of any evidence that Plaintiff's treating or examining sources considered such conditions to have a significant impact on Plaintiff's ability to perform basic work activities. *Id.* at 14-16. See *Howard v. Comm'r of Soc. Sec.*, 203 F.Supp.3d 282, 296 (W.D.N.Y. 2016) ("[T]he 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" (quoting *Taylor v. Astrue,* 32 F.Supp.3d 253, 265 (N.D.N.Y. 2012))). Significantly, the administrative record is devoid of any indication that Plaintiff's obesity, cardiomegaly, or anxiety had any impact on Plaintiff's ability to perform basic work activities, and Plaintiff did not seek treatment for any of these conditions. *See Rosario v. Apfel,* 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) ("A finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" (quoting Social Security Ruling[7] 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985)). The ALJ thus did not err at step two.

Nevertheless, the ALJ did err in assessing Plaintiff's RFC. Specifically, although the ALJ may make an RFC assessment despite the absence in the record of any function-by-function assessment of the claimant's ability to perform basic work activities,

---

[7] Social Security Rulings are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration. Such rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted." 20 C.F.R. § 402.35(b)(1).

this is permitted only when there is sufficient evidence in the record establishing such capacity. *See Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.Appx. 29, 33-34 (2d Cir. 2013) (the relevant regulations "suggest remand is not always required when an ALJ fails in his duty to request opinions, particularly where, as here, the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity.").

Here, with the ALJ's rejection of the January 13, 2014 opinion Dr. Douglas, who followed Plaintiff in connection with her no-fault insurance claim following the accident, and to which the ALJ afforded "little weight" to the opinion that Plaintiff should "not go back to work at this time" because the opinion "appears to be durational," AR at 22 (referencing AR at 388-90), the record is devoid not only of any acceptable medical opinion of Plaintiff's ability to perform basic work activities, but also of any evidence from which the ALJ could make such an assessment. Importantly, despite some of the treatment notes from Dr. Douglas referring to Plaintiff as being capable of performing activities of daily living, *see* AR at 346 (Feb. 27, 2015), 356 (Oct. 21, 2014), and 361 (Oct. 16, 2014), on October 9, 2014, Dr. Douglas reported Plaintiff's pain, described as sharp and stabbing, increases when she performs activities of daily living including bending, lifting, sitting, standing, and walking. AR at 367. This report is consistent with Dr. Douglas's earlier report of January 13, 2014, AR at 388-90, to which the ALJ afforded "little weight," as well as with Dr. Douglas's June 19, 2014 findings that Plaintiff's pain when bending and performing activities of daily living is "crushing stabbing." AR at 376-77. Moreover, Dr. Douglas's sole assessment of Plaintiff's ability to perform basic work activities, if accepted, would render Plaintiff capable of no more than sedentary work which, given Plaintiff's age of 56 as of the date of the ALJ's

12

decision, may, under the relevant Medical-Vocational Guideline, 20 C.F.R. Part 404, Subpt. 4, App. 2, Rules 201.04 and 201.06 (providing a claimant of advanced age (55 and older), with a high school education or more, but whose previous work experience does not provide for direct entry into skilled work, and regardless of whether previous work experience was unskilled (Rule 201.04) or semi-skilled or skilled with skills not transferable (Rule 201.06), is disabled under the Act), require finding Plaintiff disabled assuming the ALJ accepted the V.E.'s testimony that Plaintiff's PRW does not provide for direct entry into skilled work. AR at 69-70. Accordingly, the matter is REMANDED to the ALJ for further proceedings including consideration of Plaintiff's RFC.

Upon remand, the ALJ is also to consider whether Plaintiff's RFC actually permits Plaintiff to perform her PRW as a treatment facilitator which the ALJ, based on the V.E.'s testimony, considered consistent with a position as an admissions coordinator, as Plaintiff actually performed her job. In particular, the admissions coordinator position is identified under the Dictionary of Occupational Titles ("DOT"), as a "hospital-admitting clerk" grouped with "clerical and sales occupations" and defined as

> Interviews incoming patient or representative and enters information required for admission into computer. Interviews patient or representative to obtain and record name, address, age, religion, persons to notify in case of emergency, attending physician, and individual or insurance company responsible for payment of bill. Explains hospital regulations, such as visiting hours, payment of accounts, and schedule of changes. Escorts patient or arranges for escort to assigned room or ward. Enters patient admitting information into computer and routes printed copy to designated department. Obtains signed statement from patient to protect hospital's interests. May assign patient to room or ward. May compile data for occupancy and census records. May store patient's valuables. May receive payments on account.

DICOT 205.362-018, 1991 WL 671710.

In contrast, Plaintiff described her treatment facilitator position as requiring her to tend to admissions, transport clients, feed clients, take clients' vitals, watch over the clients as they slept, perform inventory, answer telephones, work with detox, input data, process urine samples, lift and store linens weighing up to 30 lbs., and oversee medications. AR at 33-34, 67. Significantly, despite the appearance of some overlap between the two positions with regard to clerical tasks, Plaintiff specifically testified that issues with her hands rendered her unable to return to her treatment facilitator job because she was no longer able to perform the keyboarding aspects of the job, and her other impairments would prevent her from lifting the linens, transporting clients, and supervision medications. AR at 66-67. Without a valid RFC assessment supported by substantial evidence in the record, the ALJ's subsequent determination that Plaintiff remained capable of performing her PRW as a treatment facilitator, which the ALJ found to be light work and comparable to an admissions coordinator, is also unsupported by substantial evidence in the record and requires remand.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 8) is GRANTED; Defendant's Motion (Dkt. 9) is DENIED; the matter is REMANDED to the ALJ for further development of the record including obtaining a medical opinion regarding Plaintiff's ability to perform basic work activities and a new hearing. The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: March 31st, 2020
Buffalo, New York